

**SO ORDERED.**

**SIGNED this 20th day of January, 2017.**

_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Dray Alexander Carter, | ) | Case No. 16-50723 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |

### ORDER AND OPINION DENYING MOTION TO DISMISS

This case came on for hearing on December 21, 2016 on a Motion by State Farm Mutual Automobile Insurance ("State Farm") to dismiss the involuntary bankruptcy case of Dray Alexander Carter (the "Debtor"). Due and proper notice having been given, appearing at the hearing were William P. Janvier, attorney for Petitioning Creditors; C. Edwin Allman, III, Chapter 7 Trustee; J. David Stradley, Special Counsel for Trustee; James Scott Lewis, attorney for State Farm; John P. Barringer and Jeffrey B. Kuykendal, attorneys for Allstate Insurance Company; and Sarah Bruce on behalf of the Bankruptcy Administrator. Having considered the Motion, the record in this case and the arguments from counsel, for the reasons stated below, State Farm's Motion is denied.

### BACKGROUND

The facts of this case are largely undisputed. In the early hours of April 11, 2013 the Debtor caused a fatal collision when, while driving under the influence, he crossed

1

the center line of N.C. Highway 109 and collided at highway speeds with an oncoming vehicle, killing the driver.  The Debtor qualified as an "insured" under two policies: an Allstate Insurance Company ("Allstate") policy held by the owner of the vehicle the Debtor was driving, and a State Farm policy held by the Debtor.  The decedent's estate (the "Estate") made claims with both State Farm and Allstate, offering to settle all claims against the Debtor in exchange for the policy limits on both insurance policies, totaling $60,000.00.  Allstate eventually settled with the Estate, but State Farm and the Estate were unable to reach an agreement and settle the case.  The Estate then filed a wrongful death suit against the Debtor in Davidson County Superior Court on October 2, 2014.  On March 2, 2015, the Debtor pled guilty to felony death by motor vehicle, and has since been incarcerated.  On April 11, 2016, the Estate prevailed in its wrongful death suit against the Debtor, and was awarded a judgment for $2,437,492.00 in compensatory damages plus $62,500.00 in punitive damages, plus interests and costs.[1]  The Estate then made multiple attempts at collecting on the judgment, including obtaining a writ of execution and conducting a supplemental examination in aid of execution of the judgment, all to no avail.  The Estate then turned to the bankruptcy court in furtherance of satisfying its judgment.

### PROCEDURAL HISTORY

On July 19, 2016, an involuntary Chapter 7 petition was filed pursuant to 11 U.S.C. § 303(b)(1) by the decedent's spouse individually and in her capacity as administratrix of the Estate (collectively the "Petitioning Creditors"), placing the Debtor into bankruptcy based on the civil judgment for $2,802,086.80 and a restitution claim for $13,292.34.  On July 20, 2016, summons was issued on the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1010(a), and on July 27, 2016 counsel for the Petitioning

---

[1] The judgment now stands in excess of $2,800,000.00.

Creditors filed a certificate of service stating that the Debtor had been served in prison pursuant to Rule 7004.  Additionally, the Avery County Sheriff's Office served the Debtor in prison on July 25, 2016.

The Debtor failed to respond to the involuntary petition, and on August 18, 2016 the court entered an order for relief and appointed a Chapter 7 Trustee pursuant to Rule 1013(b).  On September 14, 2016 a status hearing was held, and the Trustee informed the court that he was investigating how best to proceed with the case, as the Debtor was a *pro se* prisoner with no incentive to participate in the bankruptcy.  Also on September 14, 2016, the Trustee filed an application to employ White Stradley, PLLC, as special counsel ("Special Counsel") to represent the Trustee in possible automobile liability claims against Allstate and State Farm, and pursuant to Rule 2014, an order was entered employing counsel on September 28, 2016.  On October 12, 2016, the Trustee filed the Debtor's schedules, statements, and a list of creditors, and a meeting of creditors was scheduled for November 23, 2016 pursuant to 11 U.S.C. § 341(a).

On October 28, 2016 Special Counsel filed a motion for 2004 examination of State Farm and Allstate to inquire into potential claims the Trustee might have against the insurers for their handling of negotiations with the Estate on behalf of the Debtor, asserting that any such claims would constitute the major asset of the estate.  State Farm and Allstate each responded in opposition to the 2004 examination.

On November 14, 2016 State Farm filed the instant Motion to dismiss the case, arguing that the case was filed by the Petitioning Creditors in bad faith pursuant to 11 U.S.C. § 105(a) and § 707(a).  On November 28, 2016, the Petitioning Creditors filed a response.

At the December 21, 2016 hearing, State Farm and Allstate argued that the instant case was a ploy by Special Counsel to ensnare the insurance carriers in liability so as to abuse the bankruptcy process in asserting illegitimate third party claims by the

Petitioning Creditors against the carriers. The carriers thus asserted that the case was filed in bad faith. State Farm admitted that this case was unique and that it was unable to find a single case in support of its standing to seek dismissal, but argued that the particularities of this case gave rise to unique standing considerations. State Farm and Allstate also strongly objected to being subject to discovery under Rule 2004. The Petitioning Creditors responded that the expectation of a lawsuit does not create standing, argued that the carriers' arguments were tantamount to a premature motion to dismiss pursuant to Rule 12(b)(6), and further noted that State Farm had the burden of proof in moving for bad faith dismissal and yet State Farm offered no evidence. Special Counsel emphasized that insurance carriers defend similar lawsuits in many states with third party assignment, and that the instant bankruptcy was in response to a North Carolina prohibition on a common practice in other jurisdictions.

## DISCUSSION

Though State Farm alleges that the Petitioning Creditors acted in bad faith in initiating the instant case, the court must first address the threshold issue of whether State Farm has standing to bring its Motion, an issue State Farm acknowledges in its brief. State Farm first contends that, due to a lack of notice when the involuntary petition was filed, State Farm lacked the ability to intervene prior to the court entering an order for relief. However, this contention lacks merit, as summons was properly issued per the Bankruptcy Rules, and State Farm was not entitled to notice pursuant to Rule 1010. Further, whether State Farm had notice of the involuntary petition is immaterial, for it would have lacked standing to oppose the petition. *See, e.g.*, *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 (Bankr. S.D.N.Y. 2006) ("[T]he sufficiency of an involuntary petition may only be challenged by the debtor and not by creditors or third parties . . . ."); *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992)

(determining that creditors and stockholders lack statutory authority to contest an involuntary petition); *In re Ceiling Fan Distrib., Inc.*, 37 B.R. 701, 702–03 (Bankr. M.D. La. 1983) (finding that a third party to a bankruptcy lacks authority to oppose an involuntary petition under the Bankruptcy Code, and even if such an entity were allowed, it would not dismiss an involuntary petition but rather merely trigger a hearing to determine whether the threshold requirements for an involuntary petition are met).  Accordingly, the court is not swayed by State Farm's first contention.

Next, State Farm acknowledges that it would normally lack standing to bring such a motion,[2] but asserts that it has standing to bring the instant Motion as the unusual and extraordinary facts of this case that give rise to allegations of bad faith on the part of the Petitioning Creditors uniquely render State Farm a party in interest, "Where an involuntary bankruptcy case is hijacked by a bad faith Plaintiff, the parties being attacked, unfortunately, become parties in interest to redress such misconduct and wrongdoing and prevent injury and harm to their interests."  (Docket No. 48, page 4).[3]  This begs the question, however, as to declare State Farm an interested party by virtue of having been drawn into a bad faith filing presupposes that the Petitioning Creditors indeed acted in bad faith, a legal conclusion this court has not reached.  Thus, to deem State Farm an interested party on this basis is to put the metaphorical cart before the horse.

Additionally, State Farm argues that it is a party in interest through an analysis under *Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992), as the elements of standing are satisfied: (1) injury in fact—an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent rather than conjectural or hypothetical; (2) causality between the injury and the complained-of conduct; and (3)

---

[2] State Farm notes that it is not the Debtor, the Trustee, the BA, or a creditor of the Debtor, but rather is a third party to the Debtor's estate and not a party in interest.

[3] State Farm has no foundation in case law for this assertion.

likely, as opposed to speculative, redressability.  *Id*. at 560-61.  However, State Farm

fails to produce case law to support its assertion that it has been injured in fact, either in

a concrete and particularized, or in an actual or imminent, way.

State Farm's assertion that it has suffered an injury in fact again rests on an

erroneous analysis of the Trustee's potential causes of action. State Farm characterizes

the Trustee's potential causes of action as premised on a theory of third-party insured

liability, an impermissible cause of action under North Carolina law, and therefore

contends that it has suffered actual harm in the form of threatened litigation and a 2004

examination,[4] attacks which would not exist outside bankruptcy.  The Trustee maintains

that the potential causes of action are in fact first-party liability claims the Debtor might

have against State Farm and Allstate—claims that have come into the bankruptcy Estate

as of the entry of an order for relief.  A party covered under an insurance contract has

the right to sue the covering carrier when asserting claims related to when and how to

settle claims arising under a policy.  *See Alford v. Textile Ins. Co.*, 103 S.E.2d 8 (N.C. 1958).

*See, e.g., Abernethy v. Utica Mut. Ins. Co.*, 373 F.2d 565 (4th Cir. 1967); *Guessford v.*

*Pennsylvania Nat. Mut. Cas. Ins. Co.*, 983 F. Supp. 2d 652 (M.D.N.C. 2013).  Here, the

Debtor has potential claims against State Farm and Allstate, which the Trustee seeks to

explore in maximizing the value of the estate.

State Farm asserts that there are no claims that can be pursued in this case, as the

potential claims are not reflected on the Debtor's Schedule A/B.  Motion to Dismiss,

¶ 16.  However, this too is erroneous.  Section 541(a)(1) provides that a bankruptcy

filing creates an estate comprised of "all legal or equitable interests of the debtor in

property as of the commencement of the case" unless the property is specifically

excluded by subsections (b) and (c)(2) of Section 541.  Any cause of action that the

debtor hypothetically could have brought prepetition also becomes property of the

---

[4] There motion for Rule 2004 examination remains pending.

estate. *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir. 1984). Such claims are part of the estate even if the debtor was unaware of the claim or did not schedule the claim. *Tyler v. DH Capital Mgmt., Inc.*, c, 462 (6th Cir. 2013). Thus, any claims the Debtor could have brought against State Farm prepetition are now part of the bankruptcy estate and may be asserted by the Trustee. *See Field v. Transcon. Ins. Co.*, 219 B.R. 115, 119 (E.D. Va. 1998), *aff'd*, 173 F.3d 424 (4th Cir. 1999) (holding that the trustee was entitled to bring the debtor's bad faith failure to defend or settle automobile accident claims against insurance company).

Further, even were State Farm potentially injured by this kind of action, it is not an actual or imminent injury, as no adversary proceeding has yet been filed. *See, e.g., In re N2N Commerce, Inc.*, No. 09-16581-JNF, 2009 WL 3317274, at *2 (Bankr. D. Mass. Oct. 14, 2009) ("Because the Movants have not and may not be sued by a Chapter 7 trustee following the entry of an order for relief, the Movants are not at this juncture[5] 'persons aggrieved.'") (contrasting the status of a potential third party defendant to an involuntary bankruptcy case with the right to appeal a bankruptcy court's decision to the district court). As State Farm does not yet face a concrete and particularized injury that is actual or imminent, it does not meet the first requirement of standing under *Lujan*. Thus, State Farm lacks standing to seek dismissal of the instant case for bad faith.

Having concluded that State Farm lacks standing in this case to bring the instant Motion, the court need not go any further in addressing State Farm's claims. Nevertheless, in the alternative, if State Farm had standing to challenge the filing, the possibility that the Trustee might bring claims against State Farm—the type of claims that the Fourth Circuit in *Field v. Transcon* specifically allowed a bankruptcy trustee to

---

[5] As of the date of this order, Westlaw incorrectly replaces "juncture" with "tincture" in reproducing the text of the quoted opinion.

bring—would have been insufficient alone for the court to find bad faith. A petitioning

creditor is presumed to be acting in good faith in filing an involuntary petition. *In re*

*Forever Green Athletic Fields, Inc.*, 804 F.2d 328, 335 (3rd Cir. 2015*); In re Hutter Associates,*

*Inc.*, 138 B.R. 512, 516 (W.D.Va. 1992). Here, the Petitioning Creditors assert that they

filed the petition to prevent the wasting of the Debtor's sole possible asset. *In re*

*Silverman*, 230 B.R. 46, 53 (Bankr. D.N.J. 1998) (noting that filing an involuntary petition

with the intent to prevent dissipation of assets is a proper purpose). State Farm had the

burden of showing that the Petitioning Creditors acted in bad faith, and yet presented

no evidence to support the conclusory factual allegations that were made in its motion,

memorandum of law, and oral arguments.

Therefore, it is hereby **ORDERED** that the Motion to Dismiss is denied.

**[END OF DOCUMENT]**

PARTIES TO BE SERVED

Dray Alexander Carter
16-50723 C-7


Dray Alexander Carter
c/o Mountain View Correctional
Inmate ID Number 0834280
545 Amity Park Road
Spruce Pine, NC 28777

C.  Edwin Allman, III, Trustee
Allman Spry Davis Leggett & Crumpler
380 Knollwood Street, Ste 700
P.O. Drawer 5129
Winston-Salem, NC 27113-5129

J. David Stradley
White & Stradley, PLLC
3105 Charles B. Root Wynd
Raleigh, NC 27612

Jeffrey B. Kuykendal
McAngus, Goudelock & Courie, PLLC
P.O. Box 30307
Charlotte, NC 28230

James Scott Lewis
Butner Snow, LLP
2018 Eastwood Rd. Suite 207
Wilmington, NC 28403

William P. Janvier
Janvier Law Firm
1101 Haynes Street, Ste 102
Raleigh, NC 27604

John Barringer
McAngus, Goudelock & Courie, PLLC
6302 Fairview Road, Ste 700
Charlotte, NC 28210-2267

William P. Miller
Bankruptcy Administrator
101 S. Edgeworth St.
Greensboro, NC 27401